## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LORNE STENSON,
                    Appellant,

                    v.

DEPARTMENT OF JUSTICE,
                    Agency.

DOCKET NUMBER
CH-1221-18-0492-W-1

DATE: May 21, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Lorne Stenson</u>, Elk Grove, Illinois, pro se.

<u>Harvey Smith</u>, Esquire, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative

---
[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED concerning the appellant's August 13, 2013 alleged protected disclosure and to address the appellant's claim of reprisal for his protected activity under 5 U.S.C. § 2302(b)(9)(A)(i),[2] we AFFIRM the initial decision.

## BACKGROUND

During the relevant time, the appellant was employed by the agency as a Deputy United States Marshal (DUSM) for the Northern District of Illinois. Initial Appeal File (IAF), Tab 1 at 1, Tab 11 at 4. On July 24, 2018, the appellant filed an IRA appeal with the Board alleging that, in reprisal for his various alleged protected disclosures and protected activity, the agency subjected him to the following alleged personnel actions: (1) removal from working warrants; (2) a temporary reassignment to the Rockford, Illinois office beginning October 21, 2013; (3) a February 2014 order to undergo psychiatric testing; (4) a March 30, 2015 14-day suspension; (5) a September 9, 2016 1-day suspension; (6) retaliatory investigations; and (7) a hostile work environment. IAF, Tabs 1, 101.

After holding the appellant's requested hearing, the administrative judge issued an initial decision denying the appellant's request for corrective action. IAF, Tab 120, Initial Decision (ID). The administrative judge found that the

---

[2] As discussed herein, we also modify the initial decision by vacating additional findings made by the administrative judge.

appellant met his burden of proving that he made a protected disclosure that was a contributing factor in some of the alleged personnel actions.[3]  ID at 37-55. In particular, the administrative judge found that the appellant proved by preponderant evidence that he made a protected disclosure concerning an abuse of authority when he testified in September 2012 on behalf of another DUSM, S.L., who had been indicted by a Federal grand jury for use of excessive force against two individuals.  ID at 2-3, 38-40.  The appellant's testimony in this case concerned exculpatory evidence, which he asserted he had not disclosed to the defense team because of emails from U.S. Marshals Service management that limited employees' contact with S.L.'s counsel and threatened discipline for employees who did not comply.  ID at 3-4.  The administrative judge found that the appellant's testimony evidenced a reasonable belief of an abuse of authority by agency officials, whose emails were found to have interfered with S.L.'s constitutional rights.  ID at 38-40.  Nonetheless, the administrative judge found that the agency proved by clear and convincing evidence that it would have taken the same personnel actions absent the appellant's protected disclosure.  ID at 55-99.

The appellant has filed a petition for review, which the agency has opposed.  Petition for Review (PFR) File, Tabs 4, 6.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge erred in finding that the appellant failed to prove that his August 13, 2013 report of excessive force amounted to a protected disclosure.</u>

Protected disclosures are those that an employee reasonably believes evidence any violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A).  Whether one has a reasonable belief is determined by an objective test:  whether a disinterested observer with

---

[3]  The administrative judge found that the appellant failed to prove that his August 13, 2013 report of excessive force or his various other complaints that another deputy was harassing him constituted protected disclosures.  ID at 40-53.

knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the matters disclosed show one of the categories of wrongdoing set out in the statute. *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

The appellant alleges that he disclosed a violation of law, rule, or regulation when he reported that Deputy R.K., a fellow DUSM, used excessive and improper force on a prisoner he was transporting pursuant to a "drag order" issued by a judge to produce the prisoner in court. ID at 12, 40. In his report, the appellant asserted that the prisoner was excessively and improperly slammed into the basement wall, dragged on the ground by the leg chains, picked up and thrown from the hallway into the air onto the elevator floor, landing on his back in a "very harsh and painful manner," and kicked in the back while lying on the elevator floor. IAF, Tab 12 at 40. The administrative judge found that, although the appellant asserted that he was trained not to drag a prisoner and several witnesses testified that the best practice would have been to utilize a wheelchair, the appellant failed to identify any agency rule or regulation he contends was violated. ID at 40-41. Thus, the administrative judge found that the appellant failed to prove by preponderant evidence that he reasonably believed that he was disclosing a violation of any agency use of force policy. *Id.* The administrative judge also considered whether the appellant reasonably believed that he was disclosing the use of excessive force in violation of the prisoner's constitutional rights. ID at 41. However, she found that the appellant failed to show that a disinterested officer could have reasonably concluded that Deputy R.K. used deliberate and objectively unreasonable force. ID at 41-47.

On review, the appellant asserts that the administrative judge erred in considering his motive for making the disclosure and in requiring him to prove that a violation of law actually occurred. PFR File, Tab 4 at 9, 12, 14. We agree with the appellant that the administrative judge imposed too high a burden. The appellant need not prove that an actual violation of law occurred, rather, he must

show that the matter disclosed was one that a reasonable person in his position would have believed evidenced a violation of one of the categories of wrongdoing under 5 U.S.C. § 2302(b)(8). *See, e.g.*, *McCarthy v. International Boundary and Water Commission*, 116 M.S.P.R. 594, ¶ 34 (2011), *aff'd* 497 F. App'x 4 (Fed. Cir. 2012). Here, the administrative judge's findings conflate the issues of the appellant's reasonable belief that a violation of law occurred and proof that a violation of law actually occurred. As a result, the administrative judge improperly concluded that the deputies "did not use excessive force, or violate any law, rule, or regulation, in the transport of [the] prisoner." ID at 43. Such findings are beyond the scope of the Board's review in an IRA appeal because the whistleblower protection statutes do not give the Board the right to review the substance of an appellant's whistleblowing claims or make a determination as to whether a violation of law actually occurred. *Weber v. Department of the Army*, 9 F.3d 97, 101 (Fed. Cir. 1993); *McCarthy*, 116 M.S.P.R. 594, ¶ 37.

The administrative judge also improperly discounted testimony of other deputies concerning the reasonableness of the force used by Deputy R.K. because she determined that their opinions that the best practice would have been to transport the prisoner using a wheelchair were "categorically beneath the threshold of constitutional due process." ID at 46. Such a finding improperly imposed a heightened burden on the appellant to prove that a constitutional violation occurred. Moreover, we find that the testimony of other deputies goes to the central issue of whether a reasonable deputy would have considered the actions of Deputy R.K. to be a violation of law, rule, or regulation. *See Greenspan v. Department of Veterans Affairs*, 464 F.3d 1297, 1305 (Fed. Cir. 2006) (considering that others shared the appellant's beliefs as evidence those beliefs were reasonable). Significantly, the deputies did not testify solely that using a wheelchair to transport the prisoner instead of dragging him would have been a better practice, but rather, they also testified that they were not trained to

and they would not have dragged the prisoner under those circumstances and/or that they believed the force used by Deputy R.K. was excessive and improper.

Specifically, Deputy J.M., who was present during the prisoner transport at issue, testified that this prisoner was a known passive resistor and the day prior they had utilized a wheelchair to transport the prisoner to court. Hearing Transcript (HT) at 184-85. He further testified that, during the transport in question, he stated to Deputy R.K. something to the effect of, "I forgot that [this prisoner] is on here, let me go back upstairs and get the wheelchair" and that he and another deputy were going to go get a wheelchair, which would have taken less than a minute, but as they walked towards the elevator to do so, Deputy R.K. pulled the prisoner off of the bus and began transporting him. HT at 185, 193. Deputy J.M. also testified that he believed the force used by Deputy R.K. against the prisoner was improper and excessive and he was scared to report the incident due to fear of retaliation from his supervisors. HT at 192-93. Similarly, Deputy M.B. testified that, in his 21 years at the agency, he had never seen something like that happen and that he thought the force used was excessive. HT at 263. Additionally, Deputies J.M. and M.B. as well as two other deputies and Chief Deputy J.K. all testified that they were not trained to drag or carry a passively resisting prisoner by his leg chains or to drag a prisoner on his back generally. HT at 33, 87-88, 141, 174, 184, 240-41, 807. Thus, although management officials and the Department of Justice Civil Rights Division concluded that there was no excessive force used, IAF Tab 12 at 17; HT at 420, 493, 743, 747-48, we find that the shared perception by other deputies of an improper use of force, even if inaccurate, weighs in favor of a finding that the appellant's belief was reasonable, *see Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶ 22 (2015); *see also Greenspan*, 464 F.3d at 1305; *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 17 (2011) (noting that the standard is whether the appellant had a reasonable belief, not whether his reasonable belief was the only one possible).

We further find that the administrative judge erred in finding that, because the appellant's motive for making the disclosure was to harm Deputy R.K., the appellant could not have reasonably believed that he witnessed a display of excessive force. ID at 47. A disclosure is not excluded from protection because of an appellant's motive in making it. 5 U.S.C. § 2302(f)(1)(C); *see Parikh*, 116 M.S.P.R. 87, ¶ 18 (finding evidence that the appellant's motivation in disclosing an alleged misdiagnosis of a patient was not out of his concern for the patient but rather to tarnish the reputation of his coworker to be immaterial to the issue of whether the appellant reasonably believed that his disclosure evidenced a substantial and specific danger to public health or safety). We therefore find that the appellant reasonably believed that his disclosure regarding Deputy R.K. dragging the prisoner evidenced a violation of law, rule, or regulation.[4]

However, for the reasons described in the initial decision, we agree with the administrative judge that the appellant failed to prove that he reasonably believed that Deputy R.K. slammed the prisoner into the basement wall, picked him up and threw him into the elevator, or kicked him in the back. ID at 42-44. Based on the video evidence of the prisoner's transport, IAF, Tab 68, we agree with the administrative judge that a reasonable person could not have concluded that the prisoner was slammed into the wall, thrown into the elevator, or kicked in the back, ID at 42-44. Thus, regardless of whether a reasonable person would have considered such conduct to evidence excessive force, the video reflects that a reasonable person would not find that such conduct actually occurred. Rather, these allegations appear to be, as the administrative judge found, an exaggeration of the events in question. ID at 44.

---

[4] Although the appellant did not clearly identify a specific law, rule, or regulation, we find that an alleged use of excessive force on a prisoner so obviously implicates a violation of law, rule, or regulation that the appellant need not have identified a specific law, rule, or regulation that he contends was violated. *See, e.g.*, *Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶ 10 (2014); *Daniels v. Department of Veterans Affairs*, 105 M.S.P.R. 248, ¶ 12 (2007), *disagreed with on other grounds by Delgado v. Merit Systems Protection Board*, 880 F.3d 913 (7th Cir. 2018).

The appellant engaged in protected activity under 5 U.S.C. § 2302(b)(9) by filing a complaint with OSC.

On review, the appellant asserts that the administrative judge erred in failing to analyze his protected activity under 5 U.S.C. § 2302(b)(9) as distinct from his protected disclosures under section 2302(b)(8).  PFR File, Tab 4 at 5. We agree.  The administrative judge found that the appellant filed an OSC complaint on October 20, 2013, which he amended until OSC closed its investigation on June 7, 2018.  ID at 5-6; IAF, Tab 1 at 40.  In his OSC complaint, the appellant alleged, among other things, reprisal for his August 13, 2013 protected disclosure and his 2012 testimony in S.L.'s trial.  Having found that the appellant's 2012 testimony constituted a protected disclosure, the administrative judge appears to have considered whether the agency retaliated against the appellant based on his October 2013 disclosure to OSC, solely as it pertained to the appellant's 2012 testimony.  ID at 40.

However, the filing of an OSC complaint itself constitutes protected activity under 5 U.S.C. § 2302(b)(9)(A)(i).[5]  Thus, we agree with the appellant that the administrative judge failed to analyze whether the agency retaliated against him based on his protected activity of filing an OSC complaint and we modify the initial decision accordingly.  However, as set forth below, we find that the appellant is not entitled to corrective action regarding such a claim for the following reasons:  (1) the appellant's removal from warrants and reassignment predated the filing of his OSC complaint; (2) the appellant failed to prove that his protected activity of filing an OSC complaint was a contributing factor in his 14-day suspension; and (3) the agency proved by clear and convincing evidence

---

[5] The appellant made several extensive filings purporting to show information he raised before OSC between filing his complaint in 2013, and the date OSC closed its investigation in 2018.  IAF, Tabs 70-73, 80.  In one of these submissions, he alleged that the agency was retaliating against him for having filed the OSC complaint.  IAF, Tab 73.  Accordingly, we find that he provided OSC with a sufficient basis to pursue an investigation into this allegation, and he therefore exhausted his remedies with respect to it.  *See Chambers v. Department of Homeland Security*, 2022 MSPB 8, ¶ 10.

that it would have ordered the appellant to undergo a psychological evaluation and issued him a 1-day suspension absent the appellant's OSC complaint.

<u>To the extent the appellant established that his protected disclosures or activity were a contributing factor in the agency's personnel actions, the agency met its burden of proving that it would have taken the same personnel actions absent the appellant's protected disclosures and protected activity.</u>[6]

To prevail on the merits of an IRA appeal, an appellant must meet his initial burden of establishing by a preponderance of the evidence that his whistleblowing activity was a contributing factor in the personnel action(s) in dispute. *See* 5 U.S.C. § 1221(e)(1); *Mausser v. Department of the Army*, 63 M.S.P.R. 41, 43 (1994). The appellant "may demonstrate that the disclosure or protected activity was a contributing factor in the personnel action through circumstantial evidence, such as evidence that—(A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1)(A), (B).

Even if an appellant establishes that he made protected disclosures that were a contributing factor to the agency's personnel action, the Board will not order corrective action if the agency can show by clear and convincing evidence that it would have taken the action absent the protected disclosures. 5 U.S.C. § 1221(e)(2); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence"

---

[6] The administrative judge found that the appellant failed to show that he suffered a significant change in working conditions based on his claim of a hostile work environment or that he was subjected to a nondisclosure policy. ID at 92-96. The appellant does not challenge these findings on review, and we discern no error in the administrative judge's analysis.

standard. *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(e).

In determining whether an agency has met this burden, the Board will consider the following factors: (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Lu*, 122 M.S.P.R. 335, ¶ 7 (citing *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Id.* The Board must consider all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

Because the administrative judge found that the appellant proved that he made a protected disclosure that was a contributing factor in some of the alleged personnel actions, she made extensive findings concerning the *Carr* factors as appropriate. Although, as set forth below, we modify the administrative judge's analysis to address the appellant's claim of reprisal for filing an OSC complaint and to consider any motive to retaliate on the part of the responsible management officials due to the appellant's August 13, 2013 protected disclosure, we discern no basis for reaching a conclusion different from the administrative judge.

*Removal from Warrants*

The appellant contends that, on April 18, 2013, he was removed from warrants in reprisal for his protected disclosures. ID at 87. We find that the

appellant's August 13, 2013 disclosure, which occurred after his removal from warrants, could not have been a contributing factor in the agency's decision. *See, e.g.*, *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 27 (2011). For the same reason, we find that the appellant's removal from warrants could not have been reprisal for his subsequent protected activity of filing an OSC complaint on October 20, 2013.

Although unclear, the administrative judge appears to have found both that the appellant failed to prove that his 2012 testimony was a contributing factor in his removal from warrants and that the agency met its clear and convincing burden. ID at 88, 90. We vacate the administrative judge's finding that the appellant failed to show that his 2012 testimony was a contributing factor in the agency's decision to remove him from warrants, ID at 87-88, because we find that the appellant established contributing factor via the knowledge/timing test. The Task Force Commander and Chief Deputy J.K., who were responsible for removing the appellant from warrants, were aware of the appellant's 2012 testimony because the appellant raised the issue of his 2012 testimony in a counseling session with them just prior to his removal from warrants, ID at 87, and the removal from warrants occurred less than a year after the appellant's September 2012 testimony, *see Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 16 (2011) (stating that a personnel action taken within 1 to 2 years of the appellant's disclosure satisfies the knowledge/timing test).

Nonetheless, we discern no error in the administrative judge's findings that the agency proved by clear and convincing evidence that it would have removed the appellant from warrants absent his 2012 testimony. ID at 88-90. Regarding the first *Carr* factor, the administrative judge found that the agency had strong evidence that the appellant improperly worked a task force case that he was not assigned to work and despite his prior involvement in a shooting with the fugitive, actions which put at risk both the appellant and his fellow deputies who were assigned to the team working the case. ID at 88-89. After being counseled

about his improper actions, the appellant again interfered with the task force work by improperly contacting individuals in a sheriff's department who were not members of the task force, requiring the agency to do damage control to alleviate the concerns of a supervisor from the sheriff's department, who had specifically allotted staff and resources to the task force. ID at 89. Regarding the second *Carr* factor, the administrative judge found that the Task Force Commander and Chief Deputy J.K. did not have a motive to retaliate because the Chief arrived at the Northern District of Illinois after the incident involving S.L. and did not know of the appellant's involvement until the appellant told him during the counseling session regarding the first incident. ID at 77, 87. Similarly, the administrative judge found no motive on the part of the Task Force Commander, who was not involved in the appellant's 2012 testimony, and she credited the testimony of the Task Force Commander that, beyond the appellant's assertions during the counseling session, he had no idea that the appellant had past issues with the district, which were not his concern. ID at 87.

Although the administrative judge did not address the third *Carr* factor, there is no record evidence concerning the agency's treatment of similarly situated nonwhistleblowers. Therefore, this factor cannot weigh in the agency's favor. *See Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018); *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 30. Nonetheless, we find that the strength of the evidence and lack of motive to retaliate outweigh the lack of comparator evidence. *See Rickel v. Department of the Navy*, 31 F.4th 1358, 1366 (Fed. Cir. 2022) (noting that the absence of evidence on *Carr* factor three "will not *necessarily*" prevent the agency from meeting its burden) (emphasis in original). Accordingly, we agree with the administrative judge that the agency proved by clear and convincing evidence it would have removed the appellant from warrants absent his 2012 testimony.

*Order to Undergo Psychological Testing and Temporary Reassignment*

The appellant also contends that the agency's October 16, 2013 notification of temporary reassignment to the agency's Rockford, Illinois office and order that he undergo a psychological evaluation on February 27 and 28, 2014, constituted reprisal for his whistleblowing. IAF, Tab 16 at 25, Tab 60 at 7. The administrative judge found that, although the appellant proved that his September 2012 testimony was a contributing factor in the agency's decisions,[7] the agency had strong evidence in support of its actions, which outweighed any motive to retaliate on the part of the appellant's supervisors. ID at 75-81. Regarding the first *Carr* factor, the administrative judge credited testimony of the appellant's supervisors that both of these decisions were the result of their concern about the appellant's perception that Deputy R.K. was threatening him or would harm him, which, for them, culminated in the appellant's October 9, 2013 email to a Judicial Security Inspector.[8] ID at 76, 79-80; IAF, Tab 16 at 21. In his October 9, 2013 email, a response to a mass email containing a news story about a police officer who was shot at a courthouse, the appellant stated that he feared for his life at work and believed that one day Deputy R.K. would "lose it and shoot [him] at work." IAF, Tab 16 at 21. The administrative judge also noted that, to make the appellant's temporary reassignment as comfortable as possible, the agency built the appellant's commuting time into his day and provided him with a Government vehicle for transportation. ID at 79. The appellant does not dispute the administrative judge's findings that, in light of the appellant's belief and reports that Deputy R.K. would shoot or otherwise harm him, the agency had

---

[7] Although the appellant asserts on review that the administrative judge did not properly consider a decision to order psychological testing to be a personnel action, PFR File, Tab 4 at 23, the initial decision reflects that the administrative judge did consider such a claim, ID at 75.

[8] Prior to the appellant's October 9, 2013 email, the agency had offered the appellant the option of a voluntary temporary transfer to the Rockford office due to the appellant's fear of working with Deputy R.K. IAF, Tab 16 at 11.

strong evidence in support of these actions, and we discern no error in her analysis.

Regarding the second *Carr* factor, the administrative judge found that the Chief of the Office of Employee Health Programs made the decision to order the appellant to complete the psychological testing and that there was no evidence that she knew of the appellant's status as a whistleblower. ID at 75. Nonetheless, the administrative judge properly considered whether the appellant's supervisors, who made the decision to transfer the appellant and provided the information to the Office of Employee Health Programs, had a motive to retaliate based on the appellant's testimony in S.L.'s case. ID at 75-76. She found no motive on the part of Chief Deputy J.K., who arrived after S.L.'s case, and, although Assistant Chief Deputy T.M. was implicated in the appellant's testimony in S.L.'s case, the administrative judge found that the strength of the evidence in support of the agency's decisions outweighed any motive on his part. ID at 77-78, 80. She further found that there was no evidence that any information was presented to the Chief of the Office of Employee Health in a biased way or to otherwise improperly influence her decision. ID at 78.

We have also considered whether the appellant's supervisors had a motive to retaliate based on his August 13, 2013 protected disclosure. As to the order to undergo psychological testing, we find little motive to retaliate on the part of the appellant's supervisors given that, even considering the appellant's report could have reflected poorly on them as high-ranking individuals, at the time the Department of Justice Civil Rights Division had already agreed that there was no use of excessive force. IAF, Tab 12 at 17. As to the decision to reassign the appellant, we find that the appellant's supervisors could have had a slight motive to retaliate to the extent the appellant's August 13, 2013 protected disclosure reflected poorly on them, however, we find that any motive is outweighed by the strength of the agency's evidence. As noted above, the administrative judge found credible the testimony of the appellant's supervisors that the appellant's

October 9, 2013 email to the Judicial Security Inspector that Deputy R.K. would lose it and shoot him at work, among numerous other reports, made them concerned about the appellant's mental health and thus led to the appellant's temporary reassignment and consultation with the Employee Health Office. ID at 76-77, 79-80.

Regarding the third *Carr* factor, the administrative judge found that Deputy R.K., a nonwhistleblower, was not similarly situated based on his conduct in relaying that he felt stressed and had nightmares that the appellant would come after his family because of the appellant's continued reports against him. ID at 78, 80. Nonetheless, the administrative judge noted that Deputy R.K. was similarly sent for a fitness-for-duty examination using the same procedures that resulted in the appellant's psychiatric examination. ID at 78. However, even if the third *Carr* factor does not weigh in favor of the agency or even cuts slightly against it, we agree with the administrative judge that the strength of the evidence outweighs any slight motive to retaliate and lack of comparator evidence. *See Rickel*, 31 F.4th at 1366.

We have also considered whether the agency's decision to order a psychological evaluation constituted reprisal for the appellant's October 2013 OSC complaint to the extent Chief Deputy J.K. and Assistant Chief Deputy T.M. were aware of the appellant's OSC complaint, IAF, Tab 10 at 110-11, and provided information to the Employee Health Office that led to the psychological testing order, within a few months after the appellant filed his OSC complaint.[9] However, for the reasons described above, we find that the agency met its clear and convincing burden.

---

[9] The appellant's October 20, 2013 OSC complaint could not have been a contributing factor in the agency's prior October 16, 2013 decision to temporarily reassign him. *See, e.g.*, *Mason*, 116 M.S.P.R. 135, ¶ 27.

*14-day suspension*

The agency's suspension action was based on one charge of conduct unbecoming, supported by eight specifications. IAF, Tab 11 at 83-97. The first four specifications relate to the appellant's August 13, 2013 report of excessive force by Deputy R.K. *Id.* at 83-84. Specification 4 charged the appellant as follows: "On August 13, 2013, you displayed conduct unbecoming a DUSM when you prepared a USM-201, Field Report that contained a reckless accusation that [Deputy R.K.] excessively and improperly dragged a prisoner by his leg chains all the way down the hallway to the USMS cell block office." *Id.* at 84. Because specification 4 of the agency's conduct unbecoming charge is grounded in the appellant's protected disclosure concerning Deputy R.K. dragging the prisoner, we find that the appellant has shown that his August 13, 2013 disclosure was a contributing factor to the 14-day suspension.[10] Thus, the relevant inquiry is whether the agency has proved by clear and convincing evidence that it would have suspended the appellant based on his misconduct supporting the conduct unbecoming charge, excluding specification 4, which is grounded in the appellant's protected disclosure. *See Chambers v. Department of the Interior*, 602 F.3d 1370, 1380 (Fed. Cir. 2010) (stating that discipline may not be based on a protected disclosure); *Parikh*, 116 M.S.P.R. 197, ¶ 40. Accordingly, we vacate the initial decision to the extent it found that the agency had strong evidence in support of its action based on specification 4. Nonetheless, we agree with the administrative judge that the agency had strong evidence in support of its charge

---

[10] We find that the appellant failed to prove that his OSC complaint was a contributing factor in the agency's decision to suspend him for 14 days because there is no evidence that the deciding official was aware of the fact that the appellant had filed an OSC complaint, the appellant's oral and written replies to the proposal alleged solely reprisal based on the appellant's 2012 disclosure, IAF, Tab 11 at 17-74, and we conclude that no other circumstances suggest that the appellant's OSC complaint was a contributing factor, considering the strength of the evidence and motive analysis described herein. Although Chief Deputy J.K. was aware of the appellant's OSC complaint, IAF, Tab 10 at 110-11, it is not clear from the record when he became aware and there is no evidence to suggest that he influenced the deciding official.

based on the remaining specifications. Although we need not recount all those findings, we will provide a brief summary.

Specifications 1-3 charged the appellant with making reckless allegations concerning Deputy R.K.'s transport of the prisoner on August 13, 2013, including his alleged slamming the prisoner into the basement wall, throwing the prisoner into the air and onto the elevator floor, and kicking the prisoner. IAF, Tab 11 at 83-84. We agree with the administrative judge that the appellant's bias against Deputy R.K. appears to have colored his perception of the incident in question and led the appellant to exaggerate the manner in which Deputy R.K. transported the prisoner. ID at 60. As we previously found, a review of the video footage reflects that Deputy R.K. did not slam the prisoner into the wall, throw him, or kick him. Thus, the agency had strong evidence that such allegations were reckless. Moreover, although we find that, in the same field report, the appellant made a protected disclosure concerning Deputy R.K. dragging the prisoner, such a disclosure does not insulate him from discipline based on the nature of his additional false and reckless statements that Deputy R.K. slammed, threw, and kicked the prisoner. *See Greenspan*, 464 F.3d at 1305 (stating that wrongful or disruptive conduct is not shielded by the presence of a protected disclosure); *Watson v. Department of Justice*, 64 F.3d 1524, 1528-30 (Fed. Cir. 1995) (rejecting the appellant's argument that an adverse action must be based on facts completely separate and distinct from protected whistleblowing disclosures).

Specifications 5-7 relate to additional instances in which the appellant reported that he perceived Deputy R.K. to be threatening him or engaging in alleged misconduct. IAF, Tab 11 at 87-89. For example, in specification 5, the agency charged the appellant with making a reckless allegation that Deputy R.K. had damaged his personally owned vehicle after the appellant reported that his vehicle was scratched while parked at work. *Id.* at 87. In specification 7, the agency charged the appellant with responding to an email from a Judicial

Security Inspector[11] in which the appellant made additional unsupported and damaging remarks about Deputy R.K., including that Deputy R.K. constantly intimidated, harassed, and threatened him; implied that he had or was prone to violence and committing violent acts on people or the appellant; and that the appellant believed that one day Deputy R.K. would "lose it and shoot [him] at work." *Id.* at 89; IAF, Tab 16 at 21. The administrative judge found that the agency had strong evidence that the appellant's reports against Deputy R.K. were reckless because the appellant did not have a basis to reasonably fear for his personal safety and there was nothing in the record to support the appellant's accelerated accusations against Deputy R.K. ID at 66, 69. The administrative judge further found that no one at the hearing testified that Deputy R.K. intended to harm the appellant, and even the appellant testified that Deputy R.K. never threatened to physically harm him. ID at 69. The appellant does not dispute these findings on review, and we discern no error in the administrative judge's determination that the agency had strong evidence in support of its 14-day suspension.

Regarding the second *Carr* factor, the administrative judge found no motive to retaliate by the deciding official, a neutral individual from the agency's Discipline Management Section, who had never met the appellant and knew nothing about him. ID at 71. The administrative judge also credited the deciding official's testimony that the appellant's claims to be a whistleblower in his written response to the proposal notice did not affect her decision in the case in any way. *Id.* On review, the appellant asserts generally that the administrative judge took an overly narrow view of *Carr* factor two and failed to consider the extent to which the appellant's supervisors may have influenced the proposing and deciding officials. PFR File, Tab 4 at 24-25. To that end, we have considered whether Chief Deputy J.K., who was aware of the appellant's

[11] This was a mass electronic message to many employees containing a news article about a police officer who was shot after a gunman opened fire in a Federal courthouse in West Virginia. IAF, Tab 16 at 21.

protected disclosures and OSC complaint and may have initiated the internal affairs investigation of the appellant that led to his 14-day suspension, had a motive to retaliate.[12]   *See Whitmore*, 680 F.3d at 1371 (stating that, when applying the second *Carr* factor, the Board will consider any motive to retaliate on the part of the agency official who ordered the action, as well as any motive to retaliate on the part of other agency officials who influenced the decision); *Russell v. Department of Justice*, 76 M.S.P.R. 317, 323-24 (1997) (stating that it is proper to consider evidence regarding an investigation if it is so closely related to a personnel action that it could have been pretext for gathering evidence to retaliate against an employee for whistleblowing).

However, we find little motive to retaliate on the part of Chief Deputy J.K., who was not Chief at the time of S.L's trial and was not the subject of the appellant's August 13, 2013 disclosure.  ID at 77.  Although we agree with the appellant that Chief Deputy J.K. could have had a motive to retaliate to the extent the appellant's August 13, 2013 disclosure reflected poorly on him as the Chief, we find little motive based on the timing.  *See Whitmore*, 680 F.3d at 1370 (recognizing that "[t]hose responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees").  The appellant was not referred for investigation of his false report until after the Department of Justice had already reviewed the video footage of the August 13, 2013 prisoner transport, found no evidence to support the appellant's claims of excessive use of force, and indicated that it agreed that handling the situation through the agency's administrative procedures was appropriate.

---

[12] Although Chief Deputy J.K. testified that he only requested the Office of Professional Responsibility Internal Affairs (IA) to review the appellant's excessive force complaint and did not ask them to investigate the appellant for his alleged false report, HT at 860-61, his name is listed as the complainant in IA's investigation report concerning the appellant's alleged false report and the agency argued as much in its response, IAF, Tab 9 at 3, Tab 12 at 7.

IAF, Tab 12 at 4, 7, 17. Thus, the evidence does not support a finding that Chief Deputy J.K. initiated an investigation of the appellant in reprisal for his whistleblowing and we agree with the administrative judge's finding that the agency's investigation did not suggest a retaliatory motive because it was sparked by an objective and outside view of the videos by the Civil Rights Division.

Regarding *Carr* factor 3, the appellant contends that the administrative judge also took a restrictive view and erred in finding other employees were not similarly situated. PFR File, Tab 4 at 25-27. However, the administrative judge considered the appellant's argument that another deputy, who was not a whistleblower, wrote a false use of force report concerning the August 13, 2013 incident but was not disciplined. ID at 73. She found that the deputy's "adequate, if cursory, summary of his use of force [was] vastly different than the reckless accusations made by the appellant." ID at 72-73. However, even if the third *Carr* factor does not weigh in favor of the agency or even cuts slightly against it, we agree with the administrative judge that the strength of the evidence outweighs any slight motive to retaliate and lack of comparator evidence. *See Rickel*, 31 F.4th at 1366.

*1-day suspension*

On September 9, 2016, the appellant was suspended for 1 day based on a charge of conduct unbecoming due to an incident on March 20, 2015, in which the appellant and Deputy R.K. were involved in a verbal altercation. IAF, Tab 10 at 5, 7. We agree with the administrative judge that the appellant failed to prove that his September 2012 testimony was a contributing factor because it was so far removed from the 1-day suspension, which occurred 4 years later. ID at 81; *see Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003) (finding that personnel actions that occurred more than 2 years after a disclosure were too remote to establish a contributing factor via the knowledge/timing test under 5 U.S.C. § 1221(e)(1)). Although the appellant challenges this finding on review

by asserting that his 1-day suspension was part of a continuum of related personnel actions, PFR File, Tab 4 at 8, we find that the 1-day suspension is unrelated to any of the other alleged personnel actions at issue, rather, it was based solely on the appellant's conduct on March 20, 2015, *cf. Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 22-23 (2013) (finding the knowledge/timing test to be satisfied when a personnel action that occurred more than 2 years after the protected disclosure was part of a continuum of related performance-based actions). Moreover, the administrative judge also found that the deciding official was not aware of the appellant's 2012 protected disclosure beyond a vague reference to S.L.'s case in the appellant's oral response to the proposed suspension. ID at 82. The appellant does not challenge this finding on review, and we discern no error in the analysis. We similarly find that, although the deciding official had knowledge of the appellant's August 13, 2013 protected disclosure via his oral and written responses, the appellant's 1-day suspension over 3 years later on September 9, 2016, was too remote to satisfy the knowledge/ timing test. *See Salinas*, 94 M.S.P.R. 54, ¶ 10.

Nor do any other circumstances suggest that the appellant's disclosures were a contributing factor in his 1-day suspension. *See Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶¶ 14-15 (2012) (stating that, if an appellant has failed to satisfy the knowledge/timing test, the Board shall consider whether the contributing factor element has been met based on other evidence, such as the strength or weakness of the agency's reasons for taking the action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether those individuals had a motive to retaliate against the appellant). The administrative judge found the agency had strong evidence in support of its action and the appellant admitted that he spoke in a loud tone and engaged in a verbal altercation. ID at 84. The administrative judge further found that the motive to retaliate was imperceptible to the extent the March 20, 2015 incident was referred to the Office of Professional Responsibility Internal Affairs (IA) and a neutral

investigator conducted an investigation, after which it was turned over to a proposing and deciding official outside of the appellant's chain of command. ID at 84-85. We have also considered whether the Assistant Chief Deputy T.M., as a high-ranking individual, had a retaliatory motive in referring the incident to IA for investigation based on his knowledge of the appellant's August 2013 excessive force protected disclosure. IAF, Tab 10 at 84, 110-11. However, we find little motive to the extent the Civil Rights Division had cleared Deputy R.K. of any wrongdoing long ago. Additionally, although Assistant Chief Deputy T.M. could have had a motive based on the appellant's 2012 testimony, we agree with the administrative judge that the circumstances do not suggest retaliatory motive to the extent the Assistant Chief Deputy T.M. referred both the appellant and Deputy R.K. to IA for a neutral investigation of the March 20, 2015 verbal altercation. ID at 84-85. Accordingly, we agree with the administrative judge that the appellant failed to prove that his protected disclosures were a contributing factor in his 1-day suspension.[13]

Finally, regarding the appellant's claim of reprisal for filing an OSC complaint, we find that the appellant established contributing factor via the knowledge/timing test. The record reflects that the deciding official had knowledge of the appellant's protected activity of filing an OSC complaint. HT at 677, 685. Further, the appellant's OSC complaint and amendments thereto between October 20, 2013, and June 7, 2018, when OSC closed its investigation, occurred within a period of time such that a reasonable person could conclude that the protected activity was a contributing factor in the appellant's 1-day suspension on September 9, 2016. IAF, Tab 1, Tab 17 at 7, Tabs 21-35.

---

[13] To the extent the administrative judge made alternate findings that the agency proved that it would have suspended the appellant for 1 day absent the appellant's 2012 testimony, we vacate such findings. ID at 82-87; *see Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (stating that the Board may not proceed to the clear and convincing evidence test unless it has first made a finding that the appellant established his prima facie case), *aff'd*, 623 F. App'x 1016 (Fed. Cir. 2015).

However, based on our analysis above, we find that the agency had strong evidence in support of its decision. Further, although we acknowledge that Assistant Chief Deputy T.M. could have had a slight motive in referring the incident for investigation based on his knowledge of the appellant's OSC complaint, of which he was the subject of some of the appellant's allegations, [14] IAF, Tab 10 at 110, the circumstances under which both employees were referred for investigation do not suggest a retaliatory motive. Regarding the third *Carr* factor, the administrative judge found that the agency did not provide any evidence that Deputy R.K. was suspended for the same altercation but that the testimony of T.B., an administrative assistant, vaguely referenced that the appellant knew that Deputy R.K. was also suspended. ID at 86. We find that the third *Carr* factor does not weigh in the agency's favor because it failed to introduce complete, fully explained comparator evidence. *See Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 18. Nonetheless, weighing all three factors, we find that the strength of the evidence outweighs any slight motive to retaliate and the lack of comparator evidence. Accordingly, the agency proved by clear and convincing evidence that it would have suspended the appellant for 1 day absent his OSC complaint.

The appellant's remaining arguments do not provide a basis for reversal.

On review, the appellant appears to assert that the administrative judge should have recused herself because, from 2010 to 2015, she was employed as an Assistant United States Attorney (AUSA) for the Northern District of Illinois in Chicago, the same district that was involved in determining that the appellant's excessive force complaint against Deputy R.K. had no merit. [15] PFR File, Tab 4

---

[14] We do not discern a motive to retaliate on the part of the deciding official, who learned of the appellant's OSC complaint during the appellant's response to the proposal and was not the subject of the appellant's allegations in his OSC complaint.

[15] The appellant does not, however, allege any facts to suggest that the administrative judge was involved in the determination made by a different attorney in the criminal section of the Department of Justice Civil Rights Division. IAF, Tab 16 at 5.

at 28-29. The appellant further asserts that the administrative judge, while employed as an AUSA, worked in the same office as Deputy R.K.'s wife, who was also an AUSA, and that their office was in the same building where the appellant worked during the time the alleged retaliatory incidents occurred. *Id.* Thus, the appellant contends that the administrative judge was biased against him. *Id.* at 7, 21, 28, 32-33.

First, to establish a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators. *Oliver v. Department of Transportation*, 1 M.S.P.R. 382, 386 (1980). An administrative judge's conduct during the course of a Board proceeding warrants a new adjudication only if the administrative judge's comments or actions evidence "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Further, an allegation of bias by an administrative judge must be raised as soon as practicable after a party has reasonable cause to believe that grounds for disqualification exist and must be supported by an affidavit. *Lee v. U.S. Postal Service*, 48 M.S.P.R. 274, 280-82 (1991). Because the appellant has not met these requirements, his claim of bias fails.

In addition to claiming that the administrative judge was actually biased, the appellant is also asserting that the administrative judge should have recused herself because an objective observer might reasonably question her impartiality due to her former employment as an AUSA. PFR File, Tab 4 at 28-30. 5 C.F.R. § 1201.42(a) provides that, if an administrative judge considers herself disqualified, she will withdraw from the case. The Board has found that this regulation is not the sole source of its disqualification standards, as it will also look to the disqualification standards Congress established for the Federal judiciary at 28 U.S.C. § 455. *See Baker v. Social Security Administration*,

2022 MSPB 27, ¶ 7; *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 20 (2010). Among other things, section 455 requires recusal "in any proceeding in which [the judge's] impartiality might reasonably be questioned." 28 U.S.C. § 455(a); *Allphin v. United States*, 758 F.3d 1336, 1343-44 (Fed. Cir. 2014) (quoting 28 U.S.C. § 455(a)). "This is an objective test that mandates recusal 'when a reasonable person, knowing all the facts, would question the judge's impartiality.'" *Allphin*, 758 F.3d at 1344 (internal citations omitted).

Here, even assuming the truth of the appellant's allegations, we find that the appellant has failed to show that a reasonable person, knowing all the facts, would have questioned the administrative judge's impartiality. The mere fact that the administrative judge may have been previously employed by the office that evaluated the appellant's claim that Deputy R.K. used excessive force is not likely to have created a question in a reasonable person's mind as to the administrative judge's impartiality. As discussed above, the issue before the Board regarding the appellant's disclosure alleging the use of excessive force was whether the appellant had a reasonable belief he was reporting wrongdoing within the ambit of 5 U.S.C. § 2302(b)(8), not whether the wrongdoing actually occurred. Moreover, even if Deputy R.K.'s spouse had been employed in the same office as the administrative judge when both were AUSAs, that fact alone would not require the administrative judge to recuse herself. Accordingly, we have evaluated this claim and find that the appellant has failed to show that the administrative judge should have recused herself.

The appellant also asserts that the administrative judge erred in excluding or ignoring evidence by "summarily excluding [his] witnesses, USMS policies, rules, regulations, law, witness testimony, Carr Factors, Disparate Penalties, Douglas Factors, etc." PFR File, Tab 4 at 24. However, such conclusory arguments fail to establish any error in the administrative judge's findings. We also find unavailing the appellant's arguments that the administrative judge applied the wrong legal standards and that the agency failed to prove by

preponderant evidence that the charged misconduct occurred. *Id.* at 6-7, 15-16, 22, 28, 30. The appellant's arguments conflate the legal standards applicable in an appeal of an adverse action taken pursuant to 5 U.S.C. chapter 75 and an IRA appeal under 5 U.S.C. § 1221. Here, the initial decision reflects that the administrative judge applied the correct standard for an IRA appeal. Finally, we find unavailing the appellant's assertion that the administrative judge erred in considering statements of individuals who did not testify at the hearing. *Id.* at 8. To the contrary, the initial decision reflects that the administrative judge properly weighed the evidence. *See, e.g.*, *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same); *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83 (1981) (acknowledging that hearsay evidence is admissible in administrative proceedings).

Accordingly, we affirm the initial decision as modified.

## NOTICE OF APPEAL RIGHTS[16]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of

---

[16] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) <u>Judicial review in general</u>**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file

with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

 If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

 If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

 **(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**. This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[17] The court of appeals must <u>receive</u> your petition for

---

[17] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:            *Gina K. Grippando*
_____
Gina K. Grippando
Clerk of the Board

Washington, D.C.